UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RAEMARIE SOROKA,**

    **Plaintiff,**

**v.**                                       Case No. 8:08-cv-1423-T-TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
                                  /

## O R D E R

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-two years of age at the time of her administrative hearing in February 2007. She stands 5' 3" tall. Plaintiff obtained her GED, attended cosmetology school, and obtained certificates in cosmetology and dental assisting. Her past relevant work was as a dental assistant, newspaper delivery person, cosmetologist, and beauty supply salesperson. Plaintiff applied for disability benefits in June 2005, alleging disability as of January 17, 2005, by reason of depression, back pain, and problems with carpal tunnel [syndrome]. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ. In essence, Plaintiff testified she was unable to work because of carpal tunnel syndrome in both hands, swelling of her hands, constant pain throughout her back and neck, and problems with her feet. The last time she worked was in March 2003.

Plaintiff testified that her pain is mostly in her cervical and lumbar spine but it also goes down into the thoracic area. She rates the pain in her neck and back at a level seven or eight on a scale of ten. She also has problems with her feet and is unable to stand or sit for long periods of time. She is in constant pain; the cold and dampness make her pain worse. Plaintiff stated that she has weakness in both hands and arms, which she attributes to carpal tunnel, and pain that radiates from her neck. She cannot lift heavy things, and two to three times per week she has problems with swelling and pain, causing her to drop things. Plaintiff testified that she has difficulty picking up her purse or a gallon of milk. She complained that her hands get achy and swollen. She can only sit for ten to fifteen minutes before having to stand up. Similarly, she is only able to stand for ten to fifteen minutes before needing to sit down. She spends the majority of her day reclined in a chair with her feet elevated. Plaintiff still has a driver's license but drives only for doctors' appointments for herself or a family member.

Plaintiff testified that she has been treated at Suncoast Total Health Care for the last two years for her neck and back pain. Her doctor took a series of x-rays and told her that she has arthritis in her neck and lower back. Although her doctor previously prescribed Vicodin

2

ES and Valium for pain, Plaintiff said he now refuses to prescribe any such medication until she seeks psychiatric treatment.[1] While she previously received counseling at the Harbor Behavioral Health Care Institute, Plaintiff is not currently in counseling because she cannot afford it. While in the Harbor, she was told she is severely depressed and was prescribed Seroquel and an increased dosage of Paxil. The side effects from the medication included drowsiness and confusion, as well as a feeling of her head racing, as if it is going to explode because there is so much going on inside. Plaintiff also testified that she experiences migraine headaches three to four times per week and is prescribed Fioricet, which makes her sleepy, and Midrin. Stress, noise, and daylight exacerbate her migraines.[2]

Plaintiff has difficulty sleeping. She claimed she is in bed sixteen to seventeen hours per night and wakes up four to five times because of pain and being uncomfortable. When she does get out of bed, on average at 1:00 p.m., she has coffee, cigarettes, makes a few telephone calls, and then falls back to sleep. When she wakes again, she may eat and watch television, but she falls asleep four to five times throughout the day thereafter. On average, Plaintiff bathes every four days because she does not care. Her husband has to help her brush

---

[1] Plaintiff testified that she was Baker-Acted in November 2006 due to a Valium overdose. Additionally, she admitted a history of cocaine and other substance use as a teenager and marijuana use on two occasions in the last year to help her fibromyaligia. Additionally, Plaintiff continues to smoke a pack and a half of cigarettes per day despite having the beginnings of emphysema.

[2] The ALJ was surprised that there was little mention of the migraine headaches in Dr. Levine's records given Plaintiff's allegations. Although "migraines" was circled as a diagnosis in March 2006, on most visits there was no mention of such. The doctor's records do not contain a narrative wherein he evaluated the severity of the migraines or discussed what he was going to prescribe. (R.408-410).

3

her hair because she cannot hold her hands over her head for long. For the most part, she lives in her pajamas. Plaintiff does not cook or do household chores. (R. 380-399, 407-409).

Next, the ALJ took testimony from Irvin Roth, a Vocational Expert ("VE"). Upon a hypothetical of an individual of the same age, educational background, and work experience as the Plaintiff with a residual functional capacity for a limited range of light work who can sit for up to fifteen minutes at a time and stand or walk for up to fifteen minutes with the option to sit or stand at will; never climb a ladder, rope, or scaffold; only occasionally climb stairs, balance, and stoop; never crouch, kneel, or crawl; not have concentrated exposure to moving machinery or unprotected heights; not have more than moderate exposure to vibrations, uneven terrain, chemicals, dust, fumes, gases, or extremes of humidity, heat, or cold; and have only minimal stress in the workplace, the VE opined that such person could not perform Plaintiff's past relevant work because her prior jobs do not allow for a stand/sit option. However, the VE opined that such hypothetical individual could perform other work that exists in the local and national economy including cashier, inspector or packer type jobs, and assembler. On the second hypothetical, the ALJ added the limitation that such individual, due to arthritis and carpal tunnel syndrome, can only perform fine and gross manipulation with either hand on an occasional basis. On those facts, the VE testified that such individual could not perform any work that exists in the national economy. For the third hypothetical, the VE was asked to assume the facts identical in the first hypothetical with the added limitation that such person, because of emotional issues and borderline personality disorder, would have a limited ability to respond to changes in a routine work setting. On that hypothetical, the VE opined that if the individual was so limited that she could not handle the

4

normal ins and outs of everyday employment, such as a co-worker or supervisor coming by talking to her or changing things, then that individual could not perform the jobs he previously identified. If such a person could deal with routine changes but had difficulty for a week with significant change, then that person could still perform those jobs as they are available in the local and national economy. However, if the difficulty in adjusting to change lasted a month or so, then such individual would not be able to maintain those jobs. (R. 399-405).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of March 15, 2007, the ALJ determined that while Plaintiff has severe impairments related to cervical/thoracic/lumbar spine strain/pain, fibromyalgia, migraine headaches, chronic obstructive pulmonary disease, a borderline personality disorder, and a major depressive disorder, she nonetheless had the residual functional capacity to perform a restricted range of light exertional work.[3] Upon this finding, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 19-31). The Appeals Council denied Plaintiff's request for review.

---

[3]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are

6

supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

Plaintiff raises a single claim on this appeal. By her claim, Plaintiff contends the Commissioner erred by failing to accord controlling weight to the opinion of her treating doctor. Specifically, she argues that the ALJ improperly disregarded the opinion of Gary B. Levine, D.O.,[4] with respect to her limited ability to do repetitive handling and fingering.[5] Given the VE's testimony that no work would exist for an individual limited to light work requiring a sit/stand option and a limitation for only occasional fine and gross manipulation, Plaintiff contends that the decision is contrary to the substantial weight of the evidence. She

---

[4] The record reveals that Plaintiff was also seen by Larry Levine, D.O. It appears from the record that Dr. Gary Levine and Dr. Larry Levine worked in the same office.

[5] By this doctor's February 2007 assessment, Plaintiff would be limited in using her hands and fingers for grasping and manipulating fifty percent of the time. (R. 375).

7

complains that the ALJ failed to find any limitations with her handling and fingering despite noting medical records suggesting some degree of limitation with the hands and wrists. In light of these errors, Plaintiff urges that a reversal with remand is appropriate, with instructions to the ALJ to either pose a hypothetical to the VE which incorporates Dr. Levine's limitation or obtain clarification from Dr. Levine regarding her limited use of her hands and fingers. (Doc. 22 at 5-7).

In response, the Commissioner contends that the ALJ may properly discount a treating doctor's opinion where, as here, it is based on subjective complaints of the Plaintiff, rather than on objective medical evidence. Defendant urges that Dr. Levine failed to provide sufficient medical evidence to support his opinion, which was inconsistent with the record as a whole. In support, Defendant refers to the lack of support in Dr. Levine's records and the treatment notes of Mercely R. Devabavus, M.D., which are void of any reference to Plaintiff being limited in her ability to grip or finger. Defendant also points to a report on consultative examination, wherein Stanley Rabinowitz, M.D., noted that Plaintiff had normal grip strength with no impairments in her digital dexterity, and the findings of Nancy L. Kopitnik, D.O., another examining doctor, who noted fine and gross motor skills with only mild, minimal loss of grip strength. The Commissioner also argues that there is no obligation to re-contact a doctor, as urged by Plaintiff here, where the evidence is adequate to decide the claim. Because the ALJ's finding is supported by substantial evidence, Defendant contends the decision should be affirmed. (Doc. 23 at 4-9).

Plaintiff is correct that when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is

8

shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. § 404.1527(d)(2). Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *MacGregor*, 786 F.2d at 1053.

At the outset, I conclude that a fair reading of the decision reflects the ALJ's consideration of Plaintiff's hand and wrist complaints, as well as the medical record reflecting on the same, even if there is no express discussion of the particular limitation cited by Plaintiff. (R. 24-26). By the ALJ's consideration of the medical evidence, it is apparent he concluded that the hand impairment was not a severe condition. Given my own review of the medical record, I am obliged to find that there is substantial evidence to support this conclusion. The only contrary evidence arises from Dr. Levine's assessment in February 2007. By that assessment, Plaintiff was limited in a number of ways such that she could perform less than a full range of sedentary work. By Plaintiff's argument, Dr. Levine's limitations for handling and fingering should have been fully credited. Because I find that the ALJ fairly reviewed the medical record and stated good cause for discounting both Plaintiff's subjective complaints and this doctor's opinion testimony, I respectfully disagree.

9

As the decision reflects, before considering the opinion evidence, the ALJ clearly acknowledged Plaintiff's claim that she could not work because of "hand, neck, back and feet pain." (R. 24). Further, the ALJ expressly acknowledged Plaintiff's claimed difficulty with handling items. *Id.* In this circuit, complaints of pain are considered under a three-part "pain standard." By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 .2d 1529, 1532 (11th Cir. 1991). Here, the ALJ recognized the applicable standard and credited Plaintiff with medical conditions that could give rise to the pain and other subjective complaints, but not to the extent claimed by Plaintiff. This conclusion was reached after a fair review of the medical evidence, including the opinion evidence from treating, examining, and nonexamining doctors. Significantly, on this appeal, Plaintiff does not challenge the ALJ's credibility findings.

Furthermore, the decision reflects the ALJ's consideration of Dr. Levine's February 2007 assessment. And, while there is no specific mention of the doctor's assessment for handling and fingering, I cannot read the ALJ's discussion without concluding that the whole of the assessment was considered. Under the applicable standard, the ALJ may discount or discredit entirely the opinions of a treating doctor upon a showing of good cause. Here, the

10

ALJ discounted Dr. Levine's assessment because his treatment records failed to reveal clinical and laboratory abnormalities to support his conclusion on disability; his opinion appeared to rely on assessments outside of his area of expertise and he relied "quite heavily" on the subjective complaints of the Plaintiff despite good reason to question the reliability of the subjective evidence; and he might have been motivated to assist Plaintiff since she had obtained the assessment not for treatment purposes but upon an attorney referral in an effort to generate evidence to support her claim. (R. 28). Significantly, the ALJ also noted that no other treating or examining doctor rendered an opinion on disability or indicated limitations beyond those he determined in his residual functional capacity assessment. By the ALJ's review, no other doctor recommended any restrictions. *Id*. In summing up his conclusion, the ALJ also noted that, "[e]xaminations were essentially normal except for some joint tenderness . . ." (R.29). When the whole of the decision is considered in light of the medical evidence, this is clearly a reference to Plaintiff's hand complaints.

A review of the medical evidence supports the ALJ's conclusion. Dr. Levine's treatment notes reflect no significant clinical findings about Plaintiff's hands and appear inconsistent with, or at least unsupportive of, his later assessment.[6] (R. 266-94). As the ALJ noted, clinical findings that were made by Drs. Rabinowitz and Kopitnik, both consultative examining doctors, revealed essentially normal functional findings related to the hands and wrists. (R. 229, 297-98). Likewise, Dr. Devabavus, an earlier treating doctor, reported no significant findings. Furthermore, it appears accurate that no treating or examining doctor

---

[6]On at least one occasion, Plaintiff was seen by Maurice D. Marholin, D.O., instead of Dr. Levine.

placed any limitations on Plaintiff by reason of her hand complaints. Where, as here, the ALJ has articulated several reasons for discounting the opinions of a treating doctor and such reasons are supported by substantial evidence, the ALJ's decision is appropriately affirmed. *See Phillips*, 357 F.3d at 1241. Consequently, I conclude that Plaintiff is not entitled to relief on this claim.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 5th day of August 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record